UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELMO N. DURONSLET** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-4389** |
| **N. BURL CAIN** | **SECTION: "F"(1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Elmo N. Duronslet, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On December 2, 2010, he was convicted of two counts of armed robbery using a firearm, two counts of aggravated battery, two counts of attempted armed robbery using a firearm, and one count of possession of a firearm by a convicted felon.[1] On December 13, 2010, he was sentenced as follows: fifty years imprisonment without benefit of

---

[1] State Rec., Vol. 4 of 5, transcript of December 2, 2010, pp. 58-60; State Rec., Vol. 1 of 5, minute entry dated December 2, 2010; State Rec., Vol. 1 of 5, jury verdict forms.

parole, probation, or suspension of sentence on each of the two counts of armed robbery using a firearm; forty years imprisonment on each of the two counts of aggravated battery; and ten years imprisonment without benefit of parole, probation, or suspension of sentence on each of the two counts of attempted armed robbery using a firearm and on the one count of possession of a firearm by a convicted felon.  He was also fined $1,000 with respect to his conviction of possession of a firearm by a convicted felon.[2]  On January 24, 2012, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on September 12, 2012.[4]

In the interim, on May 9, 2011, petitioner was found to be a second offender and was resentenced as such on one of the counts of armed robbery with a firearm to a term of one hundred years imprisonment.[5]

On or about October 10, 2013, petitioner filed an application for post-conviction relief with the state district court.[6]  That application was denied on April 10, 2014.[7]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on July 17, 2014,[8] and by the Louisiana Supreme Court on July 31, 2015.[9]

---

[2] State Rec., Vol. 4 of 5, transcript of December 13, 2010.
[3] State v. Duronslet, 87 So.3d 112 (La. App. 5th Cir. 2012); State Rec., Vol. 1 of 5.  The Court of Appeal noted that the commitment/minute entry did not reflect the $1,000 fine, and the matter was therefore remanded for the limited purpose of correcting that omission.
[4] State ex rel. Duronslet v. State, 98 So.3d 815 (La. 2012); State Rec., Vol. 1 of 5.
[5] State Rec., Vol. 1 of 5, minute entry dated May 9, 2011.  Petitioner's sentences were a mix of concurrent and consecutive sentences; however, his consecutive sentences totaled one hundred ninety years.
[6] State Rec., Vol. 1 of 5.
[7] State Rec., Vol. 2 of 5, Order dated April 10, 2014.
[8] State ex rel. Duronslet v. Cain, No. 14-KH-458 (La. App. 5th Cir. July 17, 2014); State Rec., Vol. 2 of 5.
[9] State ex rel. Duronslet v. State, 174 So.3d 1145 (La. 2015); State Rec., Vol. 2 of 5.

On September 8, 2015, petitioner filed the instant federal application seeking *habeas corpus* relief claiming that his counsel was ineffective.[10] The state filed a response in which it raised no procedural defenses, but argued that petitioner's claim has no merit.[11] Petitioner filed a reply to the state's response.[12]

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[10] Rec. Doc. 1.
[11] Rec. Doc. 6.
[12] Rec. Doc. 8.

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be

4

      undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

      While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>     If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows

> Around 9:45 p.m. on July 2, 2009, Lucas Mendoza, a soccer coach, was returning home from practice to his apartment in Gretna, Louisiana. After parking his vehicle, he talked to a few people in the parking lot and then proceeded to his apartment. As he walked down the hallway to his apartment, Mr. Mendoza heard someone call him, so he turned around. Upon turning his head, he felt something hit his chest and heard a person address him in English. Mr. Mendoza turned around and saw a black gun in his face. In addition to the person holding the gun, there were two other individuals behind him, kicking and pushing him, trying to get him to kneel down. The perpetrators demanded his wallet and cell phone. Mr. Mendoza began slowly backing up in the direction of the parking lot in an effort to draw the assailants out into view. Upon reaching the parking lot, the gunman's two accomplices proceeded to take the wallets from the people in the parking lot, while the gunman took Mr. Mendoza's wallet and cell phone. Mr. Mendoza then approached the gunman and asked for his identification back, and when he did so, the gunman shot at him, missed, and fled. The police were called, and an incident report was filled out.
> 
> A few days later, at approximately 10:00 p.m. on July 5, 2009, a similar incident occurred at another apartment complex in Gretna. Armando Medina-Martinez was in the parking lot of his apartment complex, and as he was proceeding inside to his second-floor apartment, an individual in a hooded sweater approached him for a cigarette. Mr. Medina-Martinez gave the person two cigarettes and then continued on to his apartment. As he opened the door to the stairwell, he was struck

6

in the back of his head and fell to the ground. He turned to see who had hit him and saw the man who had asked him for a cigarette. This individual struck him again in his forehead with the handle of a black gun. Struggling to ascend the stairs to get somebody's attention, Mr. Medina-Martinez began wrestling with the gunman who was trying to take his wallet. When he made it to the top of the stairs, Mr. Medina-Martinez was unable to reach his door; and at this moment, he heard a gunshot and realized he had been shot in his left leg. He then managed to knock on his door. His daughter opened the door, and the gunman fled. The police responded to the scene, and Mr. Medina-Martinez was transported to the hospital.

Approximately eight hours later, at approximately 6:10 a.m. on July 6, 2009, Roberto Ruiz and Fredis Padilla, roommates and co-workers, were leaving their west bank apartment for work when a stranger told Mr. Ruiz hello. Mr. Ruiz and Mr. Padilla continued on their way to the parking lot where they got into Mr. Ruiz's vehicle and waited for the vehicle to warm up. While waiting, Mr. Ruiz, who was in the driver's seat, noticed that the stranger who had told him hello was approaching the vehicle. As this individual neared, he took out a black gun, pointed it at Mr. Ruiz, and told him to exit the vehicle. Mr. Ruiz rolled down his window and the gunman demanded his wallet. Mr. Ruiz handed him his wallet, but it was attached to a chain. The gunman ripped the wallet from the chain and then ordered Mr. Ruiz to tell Mr. Padilla to hand over his wallet as well. Mr. Padilla took out his wallet and tried to hand it to the gunman, but it fell to the floor. When Mr. Padilla went to pick it up, the gunman told him not to and demanded he exit the vehicle. Mr. Padilla was too nervous to exit the vehicle, so the gunman ordered Mr. Ruiz to exit the vehicle. When Mr. Ruiz complied, the gunman backed up a few steps, continuing to point the gun at him. The gunman glanced away, looking to see if anybody was around; at this instant, Mr. Ruiz grabbed the gun. As Mr. Ruiz struggled to wrest the gun away, the gunman shot Mr. Ruiz three times in his leg, sending him to the ground where he lay motionless, playing dead. Moments later, after the gunman fled, Mr. Padilla called 9-1-1. After the police arrived, Mr. Ruiz was transported to the hospital.

As a result of police investigation into these incidents, defendant was developed as a suspect. Sergeant John Carroll of the Jefferson Parish Sheriff's Office compiled a photographic lineup which he showed to the victims. Mr. Mendoza, Mr. Ruiz, and Mr. Padilla all positively identified defendant as the perpetrator in the photographic lineup; however, Mr. Medina-Martinez was unable to make an identification of the perpetrator.

Defendant testified in his own behalf at trial. He denied committing these crimes or having any knowledge of the robberies.[13]

---

[13] State v. Duronslet, 87 So.3d 112, 114-15 (La. App. 5th Cir. 2012); State Rec., Vol. 1 of 5.

7

### III. Petitioner's Claim

In his federal application, petitioner claims he received ineffective assistance of counsel. Specifically, he argues that his counsel was ineffective for failing to properly advise him of a plea bargain offered by the state.

In the post-conviction proceedings, the state district court denied that claim, holding:

> Petitioner has filed an application for post-conviction relief claiming ineffective assistance of counsel for counsel's failure to properly advise him of a plea bargain prior to trial which would have reduced defendant's sentencing exposure.
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.
> To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.
> Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.
> Mindful of controlling federal and state jurisprudence, the court now turns to petitioner's specific claim of ineffective assistance made in petitioner's application and argued in the memorandum in support, as well as the State's response.
> Petitioner claims that he recently learned of the State's pre-trial offer that would have resulted in a 12-year sentence, and that his counsel was ineffective for failure to present this offer to him.
> As the State surmises in its response, there is nothing in the court record and nothing presented in this application to support petitioner's claim that he was offered a 12-year sentence in exchange for his guilty plea. The letters presented by

8

petitioner from Mosi Makori (Exhibit C) and from Powell Miller (Exhibit D) fail to support petitioner's claim. Rather, these letters indicate that petitioner refused to consider any plea offers other than credit for time served.

Under LSA-C.Cr.P. art. 930.2, the petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted. The petitioner has not met his burden, as he fails to prove any deficiency in counsel's performance, or any prejudice resulting. The court finds no merit to his application.[14]

The Louisiana Fifth Circuit Court of Appeal likewise denied relief, holding:

> We find no error in the district court's April 10, 2014 ruling denying relator's application for post-conviction relief ("APCR") filed with the 24th Judicial District Court on October 18, 2013, and in finding that relator was not entitled to an evidentiary hearing on his issues raised in his application.
> In particular, we find that, upon the showing made, relator failed to prove that the district court erred in its April 10, 2014 ruling denying the claim of ineffective assistance of trial counsel. In both his application for post-conviction relief and this writ application, relator alleged that trial counsel was deficient by failing to properly advise him of the State's alleged plea offer for twelve years imprisonment, and that prejudice resulted. Instead, we find that relator has only provided conclusory allegations in both his APCR and the current writ application with little evidence to support the claim that a plea offer of 12 years existed and that trial counsel failed to inform him of any such plea offer. Thus, we find that relator has also failed to demonstrate the requisite prejudice. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and Lafler v. Cooper, __ U.S. __, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012).
> Lastly we find that, upon the showing made, relator has failed to demonstrate that in its April 10, 2014 ruling, the district court erred in finding that relator did not meet his burden of proof. See La. C.Cr.P. art. 930.2. Accordingly, we find that relator is not entitled to the relief sought, including his request for an evidentiary hearing. See La. C.Cr.P. art. 929.[15]

The Louisiana Supreme Court then also denied relief without assigning additional reasons.[16]

---

[14] State Rec., Vol. 2 of 5, Order dated April 10, 2014.
[15] State ex rel. Duronslet v. Cain, No. 14-KH-458 (La. App. 5th Cir. July 17, 2014); State Rec., Vol. 2 of 5.
[16] State ex rel. Duronslet v. State, 174 So.3d 1145 (La. 2015); State Rec. Vol. 2 of 5.

Because petitioner's claim was denied on the merits, and because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the

10

> very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). For the following reasons, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

The United States Supreme Court has clearly held the Sixth Amendment's right to counsel is "a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). Purported violations of that right must be analyzed under the two-prong analysis established in Strickland v. Washington, 466 U.S. 668, 697 (1984). See, e.g., Lafler, 132 S. Ct. at 1384; see also Missouri v. Frye, 132 S. Ct. 1399 (2012).

Under that two-prong analysis, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 697. The petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir.

11

2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

Where, as here, a petitioner claims that he was not properly advised of a favorable plea offer (i.e. an offer which would have allowed him to plead guilty to a lesser charge or to receive a less onerous sentence), he must make the following showings in order to prevail on Strickland's prejudice prong. First, he must demonstrate a reasonable probability he would have accepted the plea offer. Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012). Second, he "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." Id.

In the instant case, the state courts found that petitioner failed to meet his burden to prove the underlying factual predicate of his claim: that an uncommunicated plea offer for a twelve-year sentence was ever on the table. That is correct. For example, there is no affidavit from the prosecutor or defense counsel establishing the existence of such an offer. On the contrary, Powell Miller, petitioner's defense counsel, sent him a letter which, in pertinent part, stated:

> You were offered a plea bargain for forty years on April 14, 2010, which you rejected. I spent a lot of time explaining the case against you and the wisdom of accepting a plea. I spent a lot of time explaining the effects of a plea, to the point where you often grew angry with me. I was willing to answer any questions you might have had regarding a plea of guilty. Every plea offer was fully communicated to you, right up to the point, if my memory serves me, where the State had concluded its case. It was at this point, in the courtroom, with your mother present, that a final plea offer was rejected by you. Unfortunately.
>     At this time, your remedy lies with post-conviction relief. Unfortunately, I do not believe ineffective assistance of counsel is a successful claim for you to allege. If it was, I would admit as much (and happily sign an affidavit laying out where I was ineffective) and have in the past. However, I do not believe it applies in your case.[17]

The other documents offered by petitioner likewise fail to prove his claim. For example, petitioner's mother and sister executed affidavits which are consistent with defense counsel's letter. They state that defense counsel tried to persuade petitioner to accept a plea bargain and asked that they help convince him to do so.[18] That said, it is true that both the mother and sister also stated that defense counsel never revealed the "amount of time" offered in the plea bargain discussed. However, even putting aside the issue of the credibility of a petitioner's immediate family, as well as the issue of whether it is believable that a defense attorney who was by all accounts striving mightily to convince his client to accept a plea bargain would nevertheless

---

[17] Rec. Doc. 1-2, p. 30 (Letter to petitioner from Powell Miller dated September 12, 2013).
[18] Rec. Doc. 1-2, pp. 27 and 28 (Affidavits of Dineal Brown and Jada Singleton).

neglect to inform the client of the *extremely* generous terms of a proposed plea agreement (here, a purported twelve-year total sentence for *numerous* serious and violent crimes for which the client faced *many decades* of imprisonment upon conviction at trial), there still is no colorable evidence that an offer for a twelve-year sentence ever in fact existed. The only "evidence" petitioner presents on that point is letter to him from Mosi Makori, a private investigator, stating that Makori met with Powell on July 16, 2013, at which time Powell revealed that two deals were offered, one for forty years and then a subsequent one for twelve years, both of which petitioner rejected.[19] However, that letter is not signed or authenticated in any way; further, in any event, Makori's statement is rank hearsay.

Based on the foregoing, it is clear that the state court ruling that petitioner failed to meet his burden of proof with respect to his ineffective assistance of counsel claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, petitioner's claim should be denied.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that federal application for *habeas corpus* relief filed by Elmo N. Duronslet be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[19] Rec. Doc. 1-2, p. 29 (Letter to petitioner from Mosi Makori dated July 23, 2013).

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this twenty-fifth day of November, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.